Thomas Molloy, SBN 325068
1125 Wedgewood Drive,
Woodway, TX 76712
(760) 799-7742
*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LT. COL. JONATHAN DUNN,** an individual. | |
| Plaintiff, | |
| v. | |
| **LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **FRANK KENDALL**, in his official capacity as United States Secretary of the Air Force; **COL. GREGORY HAYNES**, in his official capacity; **MAJ. GEN. JEFFREY PENNINGTON**, in his official capacity; **UNITED STATES DEPARTMENT OF DEFENSE,** | Case No. _____ |
| | **COMPLAINT** |
| | JURY TRIAL: NO |
| Defendants. | |

Plaintiff Lieutenant Colonel Jonathan Dunn hereby alleges as follows:

## INTRODUCTION

1.      Lt. Col. Jonathan Dunn has served his country as an officer in the United States Air Force for nearly 20 years. He has flown combat missions over Afghanistan and spent many months separated from his family during overseas deployments. Due to his exemplary service, Lt. Col. Dunn was recently selected for squadron command of a reserve unit at March Air Force Base. Yet after nearly two decades of faithful service, Lt. Col. Dunn is at risk of being fired because of his sincere religious beliefs.

2.      Defendants—the Secretary of Defense, Secretary of the Air Force, two of Lt. Col. Dunn's commanding officers, and the Department of Defense (DoD)—have ordered all service members to get a COVID-19 vaccine. However, while Defendants have substantial latitude to issue such regulations, the Religious Freedom Restoration Act (RFRA) prohibits Defendants from enforcing an order that substantially burdens a service member's religious beliefs unless the order advances a compelling government interest and is the least restrictive means of achieving that interest. The Air Force's own regulations confirm that a service member should be exempted from any order burdening his religious beliefs if the Air Force can achieve its goals through less restrictive means. In addition, the DoD's regulations explicitly place the burden of proving that a challenged order is the least restrictive means of furthering a compelling interest *on the military*.

3.      Defendants' conduct here plainly violates RFRA and the First Amendment's guarantee of free exercise of religion. Defendants do not question the sincerity of Lt. Col. Dunn's religious objections to the vaccine or dispute that the vaccine mandates substantially burden his free exercise of religion. Nor could they.

4.      Nor can Defendants show that requiring Lt. Col. Dunn to receive the COVID-19 vaccination is the least restrictive means of achieving a compelling government interest. Defendants have asserted only that mass vaccination is essential to maintain force readiness and protect the health of all service members. That is a dubious proposition given the evidence that vaccinated individuals can both contract and transmit

2

Complaint

the disease. At best, the vaccine appears to provide a health benefit to the recipient by minimizing the severity of the disease. But regardless of the wisdom of Defendants' mass vaccination campaign, there is no justification for requiring *Lt. Col. Dunn* to receive the vaccine because he has acquired natural immunity due to a prior infection in July 2021. Lt. Col. Dunn is thus protected from COVID-19 at least as much as (and likely more than) those who have been vaccinated. Lt. Col. Dunn is also physically fit, relatively young, and has no preexisting conditions that would put him at risk from the disease. Yet despite Lt. Col. Dunn's previous infection and other characteristics that minimize his risk of COVID-19, Defendants have denied his request for a religious exemption based on the preposterous claim that vaccinating him is the least restrictive means of maintaining force readiness.

5.      Notwithstanding Lt. Col. Dunn's nearly two decades of exemplary service, Defendants are now threatening to discharge him from the military—fourteen months before he qualifies for his 20-year pension—because of his religiously compelled refusal to receive the vaccine. Defendants are thus poised to destroy the career of a warrior who has dedicated his life entire life to defending his country simply because he cannot in good conscience take a vaccine that will not provide any meaningful benefit to either him or the Air Force. That is precisely what RFRA and the First Amendment prohibit.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction under 28 U.S.C. § 1346 because this is a civil action against the United States.

7.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and federal law.

8.      The Court also has jurisdiction under 28 U.S.C. § 1361 to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff.

9.      The Court also has jurisdiction pursuant to 42 U.S.C. § 2000bb-1(c) because Plaintiff's religious exercise has been burdened by Defendants.

3

Complaint

10.     Venue is proper in this district pursuant to 28 U.S.C § 1391(e) because Plaintiff resides in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

11.     Plaintiff Jonathan Dunn is a Lieutenant Colonel in the Air Force Reserve Command. He lives in Marysville, California. Lt. Col. Dunn is currently a squadron commander at March Air Reserve Base in Riverside County. Lt. Col. Dunn has been an officer in the Air Force since commissioning in 2003. After completing flight school in 2004, he served for 3 years as a T-6A flight instructor at Laughlin AFB. He then trained at Dyess AFB to fly the B-1B strategic bomber, and over the next 3 years he deployed to U.S. Central Command, flying combat missions over Afghanistan. He later trained on the MC-12W, a Tactical Intelligence Surveillance and Reconnaissance aircraft and completed two more deployments over Afghanistan. Altogether, Lt. Col. Dunn completed 3 combat tours and logged over 1,400 combat hours supporting U.S. and allied forces in Afghanistan. In 2014, Lt. Col. Dunn left active-duty service and joined the Air Force Reserve. From 2014 to 2019 he was stationed at Beale AFB where he supported Pacific Air Forces Headquarters through numerous exercises and Operation SAHAYOGI HAAT providing essential planning to U.S. relief efforts following the 2015 Nepal earthquake. From 2019 to 2021 he was a member of the Joint Enabling Capabilities Command, supporting United States Southern Command, United States Naval Forces Southern Command and United States 2nd Fleet with campaign planning. Lt. Col. Dunn took command of the 452 Contingency Response Squadron on August 21, 2021. He is 14 months away from qualifying for his military pension.

12.     Defendant Lloyd J. Austin, III, is the United States Secretary of Defense. Secretary Austin issued a memorandum on August 24, 2021, which requires the United States Armed Forces to vaccinate all service members, including Plaintiff. Secretary Austin is sued in his official capacity.

Complaint

13.     Defendant Frank Kendall is the United States Secretary of the Air Force. Secretary Kendall issued a directive on September 3, 2021, which required the U.S. Air Force to vaccinate all U.S. Air Force members, including Plaintiff. Secretary Kendall is sued in his official capacity.

14.     Defendant Col. Gregory Haynes is Lt. Col. Dunn's Wing Commander. After Lt. Col. Dunn's request for a religious exemption was denied and his appeal rejected, Col. Haynes communicated that Lt. Col. Dunn would be relieved of command as early as February 14, 2022.

15.     Defendant Maj. Gen. Jeffrey Pennington, the 4th Air Force Commander, issued the November 1, 2021 vaccination order. Lt. Col. Dunn will be in violation of that order no later than Feb 23, 2022 when he is again on an order status.

16.     Defendant United States Department of Defense (DoD) is an executive branch department that coordinates and supervises all agencies and functions of the government related to the United States Armed Forces, including the vaccination policies at issue herein.

## FACTUAL ALLEGATIONS

### I.   The President, DoD, and Air Force Require All Service Members to Receive the COVID-19 Vaccine

17.     On or about July 29, 2021, President Biden directed DoD to add the COVID-19 vaccine to its list of required immunizations for all service members.[1]

18.     On August 24, 2021, Secretary Austin issued a memorandum titled "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service

---

[1] *See* The White House, "FACT SHEET: President Biden to Announce New Actions to Get More Americans Vaccinated and Slow the Spread of the Delta Variant" (July 29, 2021), https://tinyurl.com/yv7eawet ("Today, the President will announce that he is directing the Department of Defense to look into how and when they will add COVID-19 vaccination to the list of required vaccinations for members of the military."); Meghann Meyers and Howard Altman, *Military Times*, Oct. 21, 2021, https://tinyurl.com/mr25arhh.

Complaint

Members" (the "DoD Vaccine Mandate"). The DoD Vaccine Mandate directs DoD to vaccinate all active duty and reserve service members against COVID-19. The DoD Vaccine Mandate states that service members who previously contracted COVID-19, and now have active antibodies against the virus, are not considered fully vaccinated and are still required to receive a vaccination against COVID-19.

19.     The DoD Vaccine Mandate provides that DoD will only use or administer COVID-19 vaccines that are fully licensed by the United States Food and Drug Administration (FDA), in accordance with FDA-approved labeling and guidance. The DoD Vaccine Mandate provides that service members who previously received a vaccination against COVID-19 under FDA Emergency Use Authorization or World Health Organization Emergency Use Listing are considered fully vaccinated. The DoD Vaccine Mandate provides that service members actively participating in COVID-19 clinical trials are exempted from the DoD Vaccine Mandate until the trial is complete.

20.     The DoD Vaccine Mandate states that DoD will implement the DoD Vaccine Mandate consistent with DoD Instruction 6205.02, "DoD Immunization Program," dated July 23, 2019. The DoD Vaccine Mandate states that vaccination of service members will be subject to any identified contraindications and any administrative or other exemptions established in Military Department policy.

21.     Defendants issued subsequent guidance stating that service members who are not fully vaccinated by established deadlines will immediately suffer adverse consequences as directed by their service components. The adverse consequences may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

22.     On September 3, 2021, Secretary Kendall issued Memorandum for Department of Air Force Commanders, with the subject: Mandatory Coronavirus Disease

6

Complaint

2019 Vaccination of Department of the Air Force Military Members ("Air Force Vaccine Mandate"). The Air Force Vaccine Mandate requires Air Force commanders to "take all steps necessary to ensure all uniformed Airmen and Guardians receive the COVID-19 vaccine, which includes issuing unit-wide and individual orders to their military members." It provides that, "[u]nless exempted, Ready Reserve, to include National Guard, Airmen and Guardians will be fully vaccinated by 2 December 2021." The Air Force Vaccine Mandate further provides that "[o]nly COVID-19 vaccines that receive full licensure from the Food and Drug Administration (FDA) will be utilized for mandatory vaccinations unless a military member volunteers to receive a vaccine that has obtained U.S. Food and Drug Administration Emergency Use Authorization or is included in the World Health Organization's Emergency Use Listing. Individuals with previous COVID-19 infection or positive serology are not considered fully vaccinated and are not exempt."

23.     On October 18, 2021, Lt. Gen. Robert I. Miller issued a memorandum with the subject: COVID-19 Immunization Religious Accommodation Request Appeals. The memo states that Airmen who believe the Air Force Vaccine Mandate "substantially burdens their exercise of a sincerely held belief may request exemption from this immunization requirement." The memo provides that "[r]equests for religious accommodation from this requirement will follow guidance in DAFI 52-201, *Religious Freedom in the Department of the Air Force*, dated 23 June 2021." The memo directs commanders to "consider whether the member has a sincerely held belief, if the request is related to the sincerely held belief, and how and to what extent the DAF policy places a substantial burden on the exercise of their belief. The approval authority will also balance any compelling government interest, and any effect the accommodation will have on readiness, unit cohesion, good order and discipline, health, safety, and impact on the duties of the member." The memo further directed commanders to "assess whether less restrictive means can be used to meet any compelling government interest."

Complaint

24.　　On November 1, 2021, Maj. Gen. Jeffrey T. Pennington of the Air Force Reserve Command issued a memorandum with the subject: Order to Receive Mandatory COVID-19 Immunization. This document describes the procedures for seeking religious exemptions. The memorandum states that "[i]f AFRC/CC denies your religious accommodation request, you may appeal the denial." It requires all appeals to be submitted to the Surgeon General of the Air Force within 72 hours of notification of the denial. The memo states that Air Force members who submit a request for an exemption will be granted a temporary exemption until the conclusion of the appeal but warns that if the Surgeon General "denies your appeal, then your temporary exemption will be no longer in effect."

25.　　On December 7, 2021, Secretary Kendall issued a memorandum with the subject: Supplemental Coronavirus Disease 2019 Vaccination Policy. The memorandum stated that if a final appeal is denied, the "service member will have five (5) calendar days from the notice of denial to begin the COVID-19 vaccination regimen." The memo warned that "[s]ervice members separated due to refusal of the COVID-19 vaccine will not be eligible for involuntary separation pay and will be subject to recoupment of any unearned special or incentive pays."

26.　　More than 99% of military personnel have now been vaccinated pursuant to these mandates.

**II.　　The Air Force's Policy Requires It to Grant Religious Exemptions**

27.　　Department of Defense Instruction (DODI) 1300.17, Religious Liberty in the Military Services, dated September 1, 2020, establishes DoD policy in furtherance of RFRA and the Free Exercise Clause of the First Amendment to the Constitution of the United States. DoDI 1300.17 provides that it is DoD policy that "Service members have the right to observe the tenets of their religion or to observe no religion at all, as provided in this issuance."

28.　　DODI 1300.17 provides that "[i]n accordance with Section 533(a)(1) of Public Law 112-239, as amended, the DoD Components will accommodate individual

Complaint

expressions of sincerely held beliefs (conscience, moral principles, or religious beliefs) which do not have an adverse impact on military readiness, unit cohesion, good order and discipline, or health and safety. A Service member's expression of such beliefs may not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, and assignment."

29.     DODI 1300.17 provides that "[a]ccommodation includes excusing a Service member from an otherwise applicable military policy, practice, or duty. In accordance with RFRA, if such a military policy, practice, or duty substantially burdens a Service member's exercise of religion, accommodation can only be denied if:

> 1.  The military policy, practice, or duty is in furtherance of a compelling governmental interest; and
>
> 2.  It is the least restrictive means of furthering that compelling governmental interest.

In applying the standard in paragraphs 1.2.e(1) and 1.2.e(2), the burden of proof is placed upon the DoD Component, not the individual requesting the exemption."

30.     The Air Force's instruction manual, promulgated on August 7, 2012, and updated November 12, 2014, provides that "[e]very Airman is free to practice the religion of their choice or subscribe to no religious belief at all." Air Force Instruction 1-1 § 2.11. The manual explains that Airmen may "request religious accommodation" from orders that burden their exercise of religion. *Id.* § 2.11.1. The manual states that "[i]f it is necessary to deny free exercise of religion or an accommodation request, the decision must be based on the facts presented, must directly relate to the compelling government interest of military readiness, unit cohesion, good order, discipline, health and safety, or mission accomplishment, and must be the least restrictive means necessary to avoid the cited adverse impact." *Id.* § 2.11.2.

31.     The Air Force published DAF 52-2, *Accommodation of Religious Practices in the Air Force*, on July 28, 2020. Compliance with DAF 52-2 is mandatory. DAF 52-2 "implements Department of Defense Instruction (DoDI) 1300.17." DAF 52-2 provides

Complaint

that the Air Force has a "compelling government interest in mission accomplishment and will take this into account when considering Air Force members' requests for accommodation of religious practices." *Id.* § 1.2. It further provides that the "Air Force expects commanders and supervisors to permit individual expressions of sincerely held beliefs (conscience, moral principles, or religious)." *Id.* § 1.3. DAF 52-2 provides that the "Air Force will approve an individual request for accommodation unless the request would have a real (not theoretical) adverse impact on military readiness, unit cohesion, good order, discipline, or public health and safety." *Id.* § 1.4.

32.     The Air Force published DAF 52-201, *Religious Freedom in the Department of the Air Force*, on June 23, 2021. Compliance with DAF 52-201 is mandatory. DAF 52-201 "implements Department of the Air Force Policy Directive (DAFPD) 52-2." In explaining the procedures to be used when evaluating a request for a religious accommodation, DF 52-201 provides that the "first question to answer is whether the request is based on the expression of sincerely held beliefs (e.g., conscience, moral principles, or religious beliefs). If it is based on a sincerely held belief, the relevant expression can include any religious practice, whether compelled by, or central to, an organized system of religious belief." *Id.* § 2.2.1. "The second question is whether the policy, practice, or duty from which the member is requesting accommodation substantially burdens the expression of that belief." *Id.* § 2.2.2. "A governmental act is a substantial burden to a Service member's exercise of religion if it: . . . Places substantial pressure on a Service member to engage in conduct contrary to a sincerely held religious belief." *Id.* § 2.2.3.3.

33.     Under DAF 52-201, a request for accommodation will be approved "unless the request would have a real (not theoretical) adverse impact on military readiness, unit cohesion, good order, discipline, health or safety." *Id.* § 2.3. Specifically, "Commanders will approve the religious accommodation request unless a compelling governmental interest exists for the policy, practice, or duty from which the member is seeking religious accommodation. Any restriction on the expression of sincerely held religious beliefs must

10

Complaint

use the least restrictive means with respect to the applicant to achieve the compelling government interest. Using the least restrictive means necessary may include partial approval, approval with specified conditions, or other means that are less burdensome on the member's religious beliefs. With the advice of a chaplain, alternative ways (i.e., partial approval) to satisfy the requested accommodation can also be considered." *Id.* § 2.4. In determining whether a compelling governmental interest exists and whether the restriction uses the least restrictive means necessary to achieve the compelling interest," commanders must consider "[t]he importance and need for the specific policy, practice, or duty as it relates to mission accomplishment, mission readiness, unit cohesion, good order and discipline, health, and safety." *Id.* § 2.4.1.1. "Airmen and Guardians are temporarily exempted from compliance in cases of medical practice or immunization while their religious accommodation request is pending." *Id.* § 2.12.

### III.   The COVID-19 Vaccine Is Unnecessary, and Potentially Unsafe, for Those Previously Infected

34.     The COVID-19 vaccine uses mRNA technology, which cause human cells to produce a spike protein they would not normally produce. *See* Centers for Disease Control, "Understanding mRNA COVID-19 Vaccines," https://tinyurl.com/5fdy89d3 (Mar. 4, 2021).

35.     U.S. Army Lt. Col. Theresa Long, M.D., M.P.H., F.S., submitted a sworn affidavit, under penalty of perjury, as a whistleblower under the Military Whistleblower Protection Act, 10 U.S.C. § 1034, in support of a Motion for Preliminary Injunction in *Robert, et al. v. Austin, et al.*, 1:21-cv-02228-RM-STV (D. Colo., Aug. 17, 2021). In her affidavit, Lt. Col. Long expressed her expert opinion that: "None of the ordered Emergency Use COVID-19 vaccines can or will provide better immunity than an infection-recovered person."

36.     Lt. Col. Long does not hold an outlier opinion. For example, in a sworn joint declaration, Drs. Jayanta Bhattacharya and Martin Kulldoff—professors of medicine at Stanford University and Harvard Medical School, respectively—concluded that "those

Complaint

who have recovered from a SARS-CoV-2 infection possess immunity as robust and durable as that acquired through vaccination." *Zywicki v. Washington,* 1:21-cv-00894-AJT-MSN (E.D. Va., Aug. 3, 2021). Dr. Hooman Noorchashm, M.D., Ph.D.—a well-published medical expert who has held numerous prestigious faculty appointments—reached a similar conclusion in his own sworn declaration. He concluded that "[a] series of epidemiological studies have demonstrated to a reasonable degree of medical certainty that natural immunity following infection and recovery from the SARS-CoV-2 virus provides robust and durable protection against reinfection, at levels equal to or better than the *most effective* vaccines currently available." *Id.*

37.     Although there is significant debate about the extent to which the vaccine can slow the spread of the COVID-19, it is now well-established—and the CDC admits—that vaccinated individuals can both be infected with COVID-19 and transmit it to others. Indeed, Secretary Austin himself contracted COVID-19 after being vaccinated and boosted. *Statement by Secretary of Defense Lloyd J. Austin III on COVID Status,* https://tinyurl.com/44namkm9. At best, there is evidence that the vaccine prevents those infected from becoming severely ill. But even these potential benefits are inapplicable to people like Lt. Col. Dunn who have already contracted COVID-19 and possess natural immunity.

38.     The COVID-19 vaccine has resulted in a statistically significant number of serious adverse reactions, including myocarditis, a potentially fatal inflammation of the heart muscles, and pericarditis, a potentially fatal inflammation of the heart tissue. *See* Patricia Kime, *DoD Confirms: Rare Heart Inflammation Cases Linked to COVID-19 Vaccines,* Military.com (June 30, 2021), https://tinyurl.com/ya6mmh4y.

39.     There is now a wealth of data indicating that COVID-19 does not pose a serious threat to healthy individuals under 65 with no preexisting conditions. CDC, *Weekly Updates by Select Demographic and Geographic Characteristics,* https://tinyurl.com/ychxpjh3.

40.     Recently, the Omicron strain has become dominant in the United States,

Complaint

representing roughly 99% of all infections. And although this strain appears to be more contagious, it is significantly milder than previous strains, thus leading to fewer hospitalizations and deaths compared to the previous winter. *See. e.g.,* Cal. Dept. of Pub. Health., *Tracking COVID-19 in California*, https://tinyurl.com/mvph63m6. The number of positive cases is also currently plummeting in California, where Lt. Col. Dunn resides and works. *Id.*

41.     There have also been significant advances in treatments for COVID-19. In December 2021, the FDA granted emergency use authorization for Paxlovid, which treats mild to moderate COVID-19 in adults. FDA, *Coronavirus (COVID-19) Update: FDA Authorizes First Oral Antiviral for Treatment of COVID-19* (Dec. 22, 2021), https://tinyurl.com/4hfxbty8. Other treatments, including sotrovimab, Veklury (remdesivir), and molnupiravir, have previously been authorized by the FDA to treat COVID-19.

**IV.     Defendants Deny Lt. Colonel Dunn's Request For A Religious Exemption**

42.     Lt. Col. Dunn is a Christian with a sincerely held religious objection to receiving a COVID-19 vaccination. While he has not objected to mandatory vaccines in the past, no previous vaccine in his service career has carried such symbolic weight or has been used as a prerequisite to access the basic privileges available to all United States Citizens. As federal and state leaders have shifted from describing the vaccine as a medical intervention to a moral obligation—and attempted to make the vaccine the dividing line between those allowed in society and those banished to the shadows—the vaccine has taken on a symbolic and even a sacramental quality. For Lt. Col. Dunn, taking the vaccine would be akin to worshiping a false idol or participating in a religious ritual. Such an act is prohibited by his faith and he cannot take the vaccine in good conscience.

43.     Lt. Col. Dunn tested positive for COVID-19 on or about July 1, 2021. He experienced symptoms typical of those infected with the Delta variant, including fever, fatigue, and loss of taste and smell. His symptoms lasted for less than a week. He has since taken an antigen test, which reported a positive result.

Complaint

44.     Lt. Col. Dunn is in excellent physical condition, earning another 100% on his November 2021 Air Force Fitness Test. He has no preexisting medical conditions associated with adverse outcomes from COVID-19.

45.     Lt. Col. Dunn believes that he can perform 100% of his duties without receiving the vaccine, as he has done for the past two years without interruption. Indeed, Lt. Col. was selected for squadron command last September due to his exemplary service, including during the pandemic.

46.     On September 11, 2021, Lt. Col. Dunn notified his commanding officer that he intended to seek a religious exemption to the vaccine mandate. As part of the process, he had a nearly half-hour-long interview with the base's chaplain, Lt. Col. Amy Hunt. On information and belief, the chaplain agreed that Lt. Col. Dunn's religious objection was sincere and submitted a report accompanying his request for an exemption.

47.     Lt. Col. Dunn sent his request for an exemption to Lt. Gen. Scobee on or about October 16, 2021.

48.     On November 16, 2021, Lt. Gen. Scobee denied Lt. Col. Dunn's request for a religious exemption. The denial letter stated:

> I do not doubt the sincerity of your beliefs. However, when evaluating your request for religious exemption, I had to consider the risk to our mission. All immunizations, including those listed above, are an important element of mission accomplishment, as they contribute to the health, safety, and readiness of the force. Given the importance of our mission, the Department of Defense and the Department of the Air Force have a compelling government interest in maintaining a healthy and ready military force through vaccination. Specifically regarding the COVID-19 vaccination, since less restrictive means of protecting our force from COVID-19 are unavailable, all uniformed Airmen must be fully vaccinated against COVID-19 and other infectious diseases. Individual medical readiness is a critical requirement for maintaining a healthy and ready force.

49.     The letter did not explain what other less restrictive means the Air Force considered and found wanting. Nor did it provide any support for the assertion that less restrictive means are unavailable. The letter ignored the fact that Lt. Col. Dunn has

14

Complaint

already recovered from COVID-19 and that his natural immunity provides protection equal or superior to that conferred by any of the currently available injections.

50.     The letter directed Lt. Col. Dunn to submit his appeal to his unit commander within 72 hours of receiving the notice. Lt. Col. Dunn complied with that requirement and sent his appeal within the required time.

51.     On February 8, 2021, the Surgeon General of the Air Force, Lt. Gen. Robert I. Miller, sent Lt. Col. Dunn a letter denying his appeal. The letter stated that the "Air Force has a compelling government interest in requiring you to comply with the COVID-19 immunization requirement because preventing the spread of disease among the force is vital to mission accomplishment." The letter asserted that "Your health status as a non-immunized individual in this dynamic environment, and aggregated with other non-immunized individuals in steady state operations, would place health and safety, unit cohesion, and readiness at risk. Foregoing the above immunization requirement would have a real adverse impact on military readiness and public health and safety. There are no less restrictive means available in your circumstances as effective as receiving the above immunization in furthering these compelling government interests." Like Lt. Gen. Scobee's letter, Lt. Gen. Miller's letter did not explain what other less restrictive means were considered and found wanting, and it ignored the fact that Lt. Col. Dunn has already recovered from COVID-19 and that his natural immunity provides protection equal or superior to that conferred by any of the currently available injections.

52.     This boilerplate response is consistent with the Air Force's policy of issuing blanket denials of requests for religious exemptions to the vaccine mandate. The Air Force recently disclosed statistics regarding its treatment of requests for religious exemptions in *Navy Seal #1, et al. v. Biden, et al.*, No. 8:21-cv-02429 (M.D. Fla.). In response to a court order in that case, the Air Force submitted a status update on February 4, 2022, listing the number of exemptions received, reviewed, granted, and denied. *See Navy Seal #1*, No. 8:21-cv-02429, ECF No. 73-5. As of February 3, 2022, the Air Force had received an estimated 12,623 requests for religious exemptions from the vaccine

15

Complaint

mandate. *Id.* The Air Force had approved only five of those requests. *Id.* And it had approved only one appeal. Meanwhile, the Air Force has granted 1,513 temporary medical exemptions and 2,314 administrative exemptions. *Id.*

53.     Now that his appeal has been denied, Lt. Col. Dunn is faced with imminent disciplinary action, up to and including involuntary placement in the Individual Ready Reserve where he will cease to serve and accrue points toward retirement. If Lt. Col. Dunn is discharged from the military, he will lose all rights to his pension, notwithstanding his nearly 19 years of exemplary service.

**COUNT ONE: Application of the Vaccine Mandate to Lt. Col. Dunn Violates the Religious Freedom Restoration Act**

54.     Plaintiff hereby repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint.

55.     The Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.* (RFRA), states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

56.     The act broadly defines the "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4) (citing 42 U.S.C. § 2000cc-5(7)(A)).

57.     The Supreme Court has held that the exercise of religion involves "not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reasons." *Burwell v. Hobby Lobby Stores, Inc*., 573 U.S. 682, 710 (2014).

58.     The Supreme Court has articulated repeatedly that courts may not question whether sincerely held religious beliefs are reasonable to a non-religious observer. *Hobby Lobby*, 573 U.S. at 724.

59.     RFRA imposes strict scrutiny on all actions of the federal government that

16

Complaint

"substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb-1(b).

60.    DODI 1300.17 and and DAF 52-201 explicitly recognize RFRA protections for Department of Defense and Department of the Air Force members.

61.    Unless the government satisfies the compelling interest test by "demonstrat[ing] that [the] application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), the governmental act violates RFRA.

62.    Lt. Col. Dunn has sincerely held religious beliefs that prevent him from receiving the mandated COVID-19 vaccine.

63.    Defendants' Vaccine Mandates substantially burden Lt. Col. Dunn's sincerely held religious beliefs by requiring him to take an action (receiving a COVID-19 vaccine) that would violate those religious beliefs or suffer adverse employment action, financial harm, and potential physical harm.

64.    The adverse actions to which Plaintiff is subject may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

65.    Defendants' Vaccine Mandates fail strict scrutiny. Defendants do not have a compelling government interest in requiring Lt. Col. Dunn to violate his sincerely held religious beliefs by taking a COVID-19 vaccine, and Defendants' Vaccine Mandates are not the least restrictive means of accomplishing the government's purported interest. DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated, and Lt. Col. Dunn is naturally immune from COVID-19 by virtue of his previous infection. More than 99% of the Air Force has been vaccinated, and Defendants cannot show that achieving 100% vaccination compliance is

Complaint

the least restrictive means of maintaining force readiness.

66.     Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including counting natural immunity as equivalent to a vaccine, masking, remote teleworking, physical distancing, and regular testing.

67.     Indeed, as evidenced by Secretary Austin's January 2021 COVID infection, if Defendants are concerned about COVID-19 affecting its personnel, they would need to implement these other mitigation protocols even if service members receive the vaccine, because vaccinated personnel can also carry, transmit, and become sick with COVID-19.[2]

68.     Accordingly, Defendants' Vaccine Mandates violate Lt. Col. Dunn's rights under RFRA.

69.     Because of Defendants' policies and actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. Plaintiff is thus entitled to an award of monetary damages and equitable relief.

70.     Plaintiff is entitled to a declaration that Defendants violated his rights under RFRA to the free exercise of religion and an injunction against Defendants' policy and actions. Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including his reasonable attorneys' fees.

**COUNT TWO: Application of the Vaccine Mandate to Lt. Col. Dunn Violates the First Amendment – Right to Free Exercise and Assembly (42 U.S.C. § 1983)**

71.     Plaintiff hereby repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint.

72.     The First Amendment's Free Exercise Clause prohibits the government from enacting or enforcing non-neutral and non-generally applicable laws or policies unless

---

[2] Centers for Disease Control and Prevention, "Science Brief: COVID-19 Vaccines and Vaccination" (last updated September 15, 2021), https://tinyurl.com/2tpvhnns.

Complaint

they are narrowly tailored to a compelling government interest.

73.     The original public meaning of the Free Exercise Clause is that the government may not burden a sincerely held religious belief unless the government can demonstrate a compelling interest and that the law or policy burdening religious exercise is the least restrictive means to achieve that compelling interest.

74.     Plaintiff has a sincerely held religious belief that prohibits his receipt of a COVID-19 vaccine.

75.     Defendants' Vaccine Mandates substantially burden Plaintiff's sincerely held religious beliefs by requiring him to take an action (receiving a COVID-19 vaccine) that would violate those religious beliefs or suffer adverse employment action and financial harm.

76.     The adverse actions to which Plaintiff is subject may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, loss of leave and travel privileges for both official and unofficial purposes.

77.     Defendants' Vaccine Mandates are not neutral and generally applicable. The policy vests DoD and Air Force decisionmakers with the discretion to exempt service members from the mandates for medical reasons and to exempt service members already participating in COVID-19 vaccine trials, regardless of whether those medical trials provide those service members with any protection from infection or serious illness from COVID-19.

78.     Defendants' Vaccine Mandates fail strict scrutiny because Defendants do not have a compelling government interest in requiring Plaintiffs to violate their sincerely held religious beliefs by taking a COVID-19 vaccine and forcing Plaintiff to take the vaccine is not the least restrictive means of accomplishing the government's purported interest. Indeed, DoD operated for over a year during the COVID-19 pandemic with a

Complaint

ready and healthy force that had not been fully vaccinated.

79.     Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including counting natural immunity as equivalent to the vaccine, masking, remote teleworking, physical distancing, and regular testing.

80.     Indeed, Defendants will need to implement these other mitigation protocols even if service members receive the vaccine, because vaccinated personnel can also carry, transmit, and become sick with COVID-19. Centers for Disease Control and Prevention, "Science Brief: COVID-19 Vaccines and Vaccination" (last updated September 15, 2021), https://tinyurl.com/2tpvhnns.

81.     Moreover, 99% of the Air Force is vaccinated, and Defendants cannot show that requiring 100% vaccination rate is the least restrictive means of maintaining force readiness.

82.     Accordingly, Defendants' Vaccine Mandates violate Lt. Col. Dunn's rights to the free exercise of religion under the First Amendment.

83.     Because of Defendants' policy and actions, Lt. Col. Dunn has suffered and continues to suffer irreparable harm. He is thus entitled to equitable relief.

84.     Plaintiff is entitled to a declaration that Defendants violated his First Amendment rights to free exercise of religion and an injunction against Defendants' policy and actions. Additionally, Plaintiff is entitled to the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

1. An order and judgment declaring that Defendants' vaccination policies, as applied to Lt. Col. Dunn, violate the Religious Freedom Restoration Act.

2. An order and judgment declaring the Defendants' vaccination policies, as applied to Lt. Col. Dunn, violate the First Amendment to the United States Constitution.

Complaint

3. An order temporarily, preliminarily, and permanently enjoining and prohibiting Defendants from enforcing the vaccination policies against Lt. Col. Dunn or taking any adverse action against him based on his refusal to take the vaccine.

4. Actual damages in the amount of pay Lt. Col. Dunn will lose as a result of Defendants' discriminatory vaccine policies under the Religious Freedom Restoration Act.

5. Plaintiff's reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

6. Such other and further relief as the Court deems appropriate and just.

Date: 2/14/2022                    /s/ *Thomas Molloy*
                                   Thomas Molloy, SBN 325068
                                   1125 Wedgewood Drive,
                                   Woodway, TX 76712
                                   (760) 799-7742
                                   *Counsel for Plaintiff*

21

Complaint